**Cindy Lou PETTENGILL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Action No. 2:94cv314.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 3, 1994.

Judith M. Cofield, Shuttleworth, Ruloff, Giordano & Kahle, Virginia Beach, VA, for plaintiff.

Michael A. Rhine, Asst. U.S. Atty., Norfolk, VA, for defendant.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

### I. Factual and Procedural History

Plaintiff Cindy Lou Pettengill seeks relief for alleged injuries arising out of a bilateral tubal ligation operation performed on her by doctors employed by Defendant United States at the Naval Hospital in Portsmouth, Virginia. Am.Compl. In her amended complaint, Plaintiff alleged that Defendant's fail-

ure to obtain written informed consent before performing the operation constituted negligence *per se* under Virginia law.[1] Am. Compl. ¶ 4. Defendant has filed a partial motion for summary judgment under Fed. R.Civ.P. 56 claiming that, although Defendant did not obtain written informed consent, its conduct did not constitute negligence *per se*. Plaintiff responded with a cross-motion for partial summary judgment to establish the existence of negligence *per se*.[2] On September 26, 1994, the Court heard oral argument on the cross-motions and took the matter under advisement. The motions are now ready for determination.

### II. Standard of Review

■ A motion for partial summary judgment utilizes the same standards required for consideration of a full motion for summary judgment. *See Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985), *amended* 788 F.2d 1042 (4th Cir.1986); Fed.R.Civ.P. 56(d). The court may grant summary judgment on an issue only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court reviews the record as a whole and in the light most favorable to the nonmoving party; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Both parties agree that Defendant did not obtain the written informed consent from Plaintiff described by Virginia Code section 54.1–2974.[3] As a result, the Court must re-

---

1. Plaintiff has proceeded under the Federal Tort Claims Act, and both parties acknowledge that Virginia substantive law governs her case. *See Sawyer v. United States*, 465 F.Supp. 282, 285 (E.D.Va.1978); Am.Compl. ¶ 3.

2. Both parties agree that an issue of material fact exists as to whether the Plaintiff consented to the procedure other than in writing. Def.'s Mem. Supp.Mot. for Partial Summ.J. at 2, n. 1; Mem. Opp. to Def.'s Mot. for Summ.J. and in Supp.

Pl.'s Cross–Mot. for Partial Summ.J.; Pettengill Aff. ¶ 4.

3. Virginia Code section 8.01–221 permits damages for those injured by a violation the Virginia Code. Va.Code Ann. § 8.01–221 (Michie 1992). However, this section does not create a new right of action where none existed. *See Vansant & Gusler, Inc. v. Washington*, 245 Va. 356, 360–61, 429 S.E.2d 31, 33 (1993). Instead, it prevents a wrongdoer from avoiding civil liability based on

solve as a matter of law the issue of Defendant's alleged negligence *per se.*

### III. Analysis

■ In this case, the pertinent legislation, Virginia Code section 54.1–2974, provides that it is lawful for a licensed physician to perform a sterilization operation when the physician obtains written informed consent from the patient.[4] It is uncontested that Defendant, through its authorized agents, failed to obtain written consent from the Plaintiff before performing the operation. However, the parties disagree as to whether Defendant's conduct constitutes negligence *per se* under Virginia Code section 54.1–2974.

■ Under Virginia law, a defendant's violation of a statute will constitute negligence *per se* if the injured party belongs to the class of persons for whose benefit the violated statute was enacted. *Butler v. Frieden,* 208 Va. 352, 353, 158 S.E.2d 121, 122 (1967) (finding of negligence *per se* for violation of ordinance requiring dogs to be leashed when plaintiff bit by dog); *accord Williamson v. Old Brogue, Inc.,* 232 Va. 350, 355, 350 S.E.2d 621, 624 (1986) (no finding of negligence *per se* for violation of statute prohibiting tavern owner from serving beer to minor when plaintiff injured by minor driver). However, in this case, Defendant argues that Virginia Code section 54.1–2974 operates as a safe harbor for licensed physicians by insulating them from liability for performing a sterilization operation if they obtain written informed consent. Plaintiff instead contends, even though the physicians who perform the operations may be incidental beneficiaries of the statute, the primary and intended beneficiaries of the statute are those persons receiving sterilization operations.

No Virginia Supreme Court cases have interpreted the meaning of section 54.1–2974. Thus, this Court must look to the language of the statute and to the legislative intent giving rise to its enactment. *See generally City of Virginia Beach v. Board of Supervisors,* 246 Va. 233, 236, 435 S.E.2d 382, 384 (1993) (when statute is ambiguous, court's primary objective is to determine the legislative intent in the use of the ambiguous term). In addition, a court may examine the context of a particular statute by "considering ... the language of other statutes dealing with closely related subjects." *Id.* Also, "[t]he purpose for which a statute is enacted is of primary importance in its interpretation or construction." *Norfolk S. Ry. v. Lassiter,* 193 Va. 360, 364, 68 S.E.2d 641, 643 (1952).

A. Language of sections 54.1–2974 and 54.1–2979

The language of section 54.1–2974 does not state for what class or classes of persons the statute was intended to benefit. Section 54.1–2974 begins with, "[i]t shall be lawful ..." This introductory language signifies that the law permits the listed activity in the statute. While the words of this section do establish rules for providing informed consent, this construction does not command this Court to find that the statute protects those receiving sterilization operations. A more logical construction treats the statute as a "safe harbor" for licensed physicians performing sterilization operations according to the described consent procedures, with general principles of negligence then governing a sterilization performed outside of these procedures. *See* Va.Code Ann. § 54.1–2979 (Michie 1991).[5]

Plaintiff has asserted that this Court should infer from the statute that it shall be

---

the theory that he has paid his penalty under a penal statute. *Id.*

**4.** Specifically, the section reads:

It shall be lawful for any physician licensed by the Board of Medicine to perform a vasectomy, salpingetomy, or other surgical sexual sterilization procedure on any person eighteen years of age or older, who has the capacity to give informed consent, when so requested in writing by such person. Prior to or at the time of such request, a full, reasonable, and compre-

hensible medical explanation as to the meaning and consequences of such an operation and as to alternative methods of contraception shall be given by the physician to the person requesting the operation. No such operation shall be performed prior to thirty days from the date of the written request therefor upon a person who has not previously become the natural or adoptive parent of a child.
Va.Code Ann. § 54.1–2974 (Michie 1991).

**5.** *See infra* at 383 for discussion of this code section and note 7 for text thereof.

unlawful for those licensed physicians performing sterilization operations to fail to abide by the statutory conditions. Yet, section 54.1–2974 does not explicitly state what shall be unlawful. In addition, a case from this Court and a 1981 Virginia Attorney General opinion have rejected the application of the inferential maxim *expressio unius est exclusio alterius*, namely, the rule that because the statute identifies lawful behavior, by exclusion, it identifies what is unlawful. *Doe v. Temple*, 409 F.Supp. 899, 902 (E.D.Va. 1976) (Mehridge, J.); 1981–82 Op. Att'y Gen. Va. 343, 344 n. 1 (Oct. 27, 1981). Although the Virginia Supreme Court has used this principle in construing statutes,[6] such an inference from section 54.1–2974 would produce a statutory result that the Virginia General Assembly may not have intended. *Temple*, 409 F.Supp. at 902. Thus, this Court refuses to read any additional meaning into the statute because its words simply state what the law permits.

■■■ Another relevant statute, Virginia Code section 54.1–2979,[7] insulates licensed physicians from either civil or criminal liability for performing a sterilization operation in accordance with other provisions of the same article, which article includes section 54.1–2974 at issue in the case at bar. Importantly though, section 54.1–2979 specifically states that its application is "[s]ubject to the rules of law generally applicable to negligence."[8] *Id.* In Virginia, these rules include the doctrine of informed consent, which requires physicians to "disclose to patients the alternative to and risks of a particular treatment." *Bly v. Rhoads*, 216 Va. 645, 648, 222 S.E.2d 783, 785 (1976).[9] Moreover, failure of a physician to give a particular warning under the doctrine of informed consent does not estab-

lish negligence *per se*, but rather becomes a factor of proximate cause. *See Cunningham v. United States*, 683 F.2d 847, 849 (4th Cir.1982) (applying Virginia law in a medical malpractice case brought under the Federal Tort Claims Act). Therefore, the language of section 54.1–2979, in conjunction with the general principles of negligence applicable in Virginia, persuade this Court that Defendant's conduct does not constitute negligence *per se*.

### B. Purpose of section 54.1–2974

Although the Virginia Supreme Court has not addressed the purpose of Virginia Code section 54.1–2974, this Court has considered, in dicta, the purpose behind the predecessor of that section. *Temple*, 409 F.Supp. at 899. Primarily, the *Temple* case addressed the constitutionality of the spousal consent portion of the sterilization statute. *Id.* In considering whether the spousal consent provision was mandatory, the Court discussed whether the statute imposed liability for those operations performed outside its scope or whether the statute provided immunity to physicians acting within its scope. *Id.* The Court relied on a Virginia Attorney General opinion, which construed the statute as providing immunity to physicians. *Id.* at 901–02, *citing* (1972–73) *Report of the Attorney General of Virginia* at 340 (Letter of December 28, 1973). Significantly, the *Temple* Court addressed the purpose of the Virginia sterilization statute and determined that it functioned as an immunity statute.

The Attorney Generals of Virginia have consistently interpreted the Virginia sterilization statutes to provide merely immunity for physicians when their conduct conforms

---

6. *See e.g. Turner v. Wexler*, 244 Va. 124, 418 S.E.2d 886 (1992) (certain entities not listed within the statutory definition of health provider not intended to be a part of that definition); *Grigg v. Commonwealth*, 224 Va. 356, 297 S.E.2d 799 (1982) (statute which permits students to be taught at home by qualified instructor raises inference that "instruction by unapproved person shall be impermissible").

7. Specifically, the section reads:
Subject to the rules of law applicable generally to negligence, no physician licensed by the Board of Medicine shall be either civilly or

criminally liable by reason of having performed a vasectomy, salpingectomy, or other surgical sexual sterilization procedure upon any person in this Commonwealth as authorized in this article.
Va.Code Ann. § 54.1–2979 (Michie 1991).

8. *See supra* note 7.

9. As stated earlier, Defendant concedes that no *written* informed consent was obtained, but claims that *verbal* informed consent was given by Plaintiff. *See supra* at 1, 3 and note 2.

to the requirements of the statute. 1981–82 Op. Att'y Gen.Va. 343 (Oct. 27, 1981) (interpretation of former sections 54–325.9 to 54–325.15); 1979–80 Op. Att'y Gen.Va. 325 (Oct. 25, 1979) (interpretation of former sections 54–325.3, 54–325.4, 54–325.5:1, and 54–325.6); 1977–78 Op. Att'y Gen.Va. 391 (July 22, 1977) (interpretation of former section 32–426); 1973–74 Op. Att'y Gen.Va. 340 (Dec. 28, 1973) (interpretation of former section 32–426). In a letter directed to the President of the Virginia State Board of Medicine, the Attorney General specifically states that the section does not operate as an enabling statute, which prohibits a physician from performing a proscribed procedure. 1981–82 Op. Att'y Gen.Va. 343 (Oct. 27, 1981). Notwithstanding the 1981 opinion, the General Assembly has preserved the "it shall be lawful" wording of the Virginia sterilization statute. Consequently, this Court accepts an immunity interpretation of section 54.1–2974. *See id.*

Plaintiff has argued that several Virginia cases recognize that a statute can establish the level of the standard of care when a common law duty exists between two parties. *See Williamson,* 232 Va. at 355, 350 S.E.2d at 624; *Butler,* 208 Va. at 353, 158 S.E.2d at 123. Certainly a physician owes a duty of care to the patient in the manner in which he performs the operation. *See Hicks v. United States,* 368 F.2d 626, 629 (4th Cir.1966). However, the rule on which Plaintiff relies appears in the context of the following discussion by the Virginia Supreme Court:

> "In order for the violation of a statute or ordinance to constitute actionable negligence, the injured person must have been of that class for whose benefit or protection the law was enacted...." *Smith v. Transit Co.,* 206 Va. 951, 957, 147 S.E.2d 110, 114–15 (1966). In other words, a statute may define the standard of care to be exercised where there is an underlying common-law duty, but the doctrine of negligence *per se* does not create a cause of action where none otherwise exists. *Butler v. Frieden,* 208 Va. 352, 353, 158 S.E.2d 121, 123 (1967). So the crucial question in this phase of the case is whether a person

injured by an intoxicated customer of a vendor of intoxicants is a member of the class for whose benefit Code § 4–62(1)(c) was enacted. We answer that query in the negative.

*Williamson,* 232 Va. at 355, 350 S.E.2d at 624 (emphasis added). This Court answers the "crucial question" in this case by recognizing that the language and existing interpretations of the purpose of section 54.1–2974 favor treating the statute as benefitting physicians. Because Plaintiff does not belong to the class for whom the statute was intended to benefit, this Court does not find that Defendant's conduct amounted to negligence *per se.*

## IV. Conclusion

Plaintiff may pursue her cause of action in negligence against Defendant; however, Defendant's actions outside section 54.1–2974 in performing the sterilization operation do not rise to negligence *per se.* The Court GRANTS Defendant's motion for partial summary judgment, and the Court DENIES Plaintiff's cross-motion for partial summary judgment. Due to the Court's rulings on the cross-motions for partial summary judgment, the Court exercises its discretion to permit the United States to employ expert witnesses for trial. Accordingly, the Court has entered a separate order extending the time for disclosure of Defendant's experts.[10]

IT IS SO ORDERED.

---

10. Although the Court's Order on Initial Pretrial Conference required expert witness disclosure no later than August 1, 1994, these cross-motions for summary judgment and the rulings thereon have delayed such disclosure.